# Exhibit "A"



**CT Corporation**
**Service of Process Notification**
10/16/2023
CT Log Number 544927812

## Service of Process Transmittal Summary

**TO:**   Rebecca Thompson, Legal Svs Spclst
UnitedHealth Group Incorporated (111504190770700600)
9900 BREN RD E STE 300W
MINNETONKA, MN 55343-9693

**RE:**   **Process Served in Florida**

**FOR:**   UnitedHealthcare Insurance Company (301800099745000000048)  (Domestic State: CT)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | VANGUARD PLASTIC SURGERY, PLLC D/B/A VANGUARD AESTHETIC AND PLASTIC SURGERY vs. UNITEDHEALTHCARE INSURANCE COMPANY |
| **CASE #:** | CACE23019551 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **PROCESS SERVED ON:** | C T Corporation System, Plantation, FL |
| **DATE/METHOD OF SERVICE:** | By Electronic Receipt on 10/16/2023 at 00:00 |
| **JURISDICTION SERVED:** | Florida |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 10/16/2023, Expected Purge Date: 11/15/2023 |
| | Image SOP |
| | Email Notification,  Administrative Assistant  legalmail@uhg.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System<br>1200 South Pine Island Road<br>Plantation, FL 33324<br>877-564-7529<br>MajorAccountTeam2@wolterskluwer.com |
| **REMARKS:** | Process received by Chief Financial Officer on 10/13/2023, and forwarded to C T Corporation System by electronic delivery on 10/16/2023 |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

*23-000509688*

CHIEF FINANCIAL OFFICER
JIMMY PATRONIS
STATE OF FLORIDA

---

VANGUARD PLASTIC SURGERY, PLLC D/B/A
VANGUARD AESTHETIC AND PLASTIC
SURGERY

PLAINTIFF(S)

VS.

UNITEDHEALTHCARE INSURANCE COMPANY

DEFENDANT(S)

_____/

SUMMONS, COMPLAINT, CIVIL COVER SHEET

**CASE #:**   **CACE-23-019551**
**COURT:**   **17TH JUDICIAL CIRCUIT**
**COUNTY:**   **BROWARD**
**DFS-SOP #:** 23-000509688

# <u>NOTICE OF SERVICE OF PROCESS</u>

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said process was received in my office by ELECTRONIC DELIVERY on Friday, October 13, 2023 and a copy was forwarded by ELECTRONIC DELIVERY on Monday, October 16, 2023 to the designated agent for the named entity as shown below.

UNITEDHEALTHCARE INSURANCE COMPANY
DONNA MOCH
1200 SOUTH PINE ISLAND ROAD
PLANTATION, FL 33324

**\*Our office will only serve the initial process (Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule 1.080.**

Jimmy Patronis
Chief Financial Officer

LAURA FONSECA
SHAPIRO BLASI WASSERMAN HERMANN
7777 GLADES ROAD
SUITE 400
BOCA RATON, FL 33434

KS1

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.: CACE-23-019551

DIVISION: 12

VANGUARD PLASTIC SURGERY, PLLC d/b/a
VANGUARD AESTHETIC AND PLASTIC
SURGERY,

      Plaintiff,

vs.

UNITEDHEALTHCARE INSURANCE
COMPANY, a foreign corporation,

      Defendant.

_____/

## CIVIL ACTION SUMMONS

THE STATE OF FLORIDA
To Each Sheriff of the State:

    YOU ARE COMMANDED to serve this summons and a copy of the Complaint in this
action on Defendant:

**UNITEDHEALTHCARE INSURANCE COMPANY**
**c/o Registered Agent**
**Chief Financial Officer**
**200 E. Gaines Street**
**Tallahassee, Florida 32399**

    A lawsuit has been filed against this corporation. The Defendant is required to serve
written defenses to the Complaint on RICHARD P. HERMANN, II, ESQ., Shapiro, Blasi,
Wasserman & Hermann, P.A., Plaintiff's attorney, whose address is 7777 Glades Road, Suite
400, Boca Raton, Florida 33434, within twenty (20) days after service of summons on the
Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk
of this Court either before service on Plaintiff's attorney or immediately thereafter. If the
Defendant fails to do so, a default will be entered against that Defendant for the relief demanded
in the Complaint.

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 10/12/2023 01:55:47 PM.****

DATED on _____ OCT 12 2023 .

BRENDA D. FORMAN,
Clerk of the Circuit Court

BY: _____
As Deputy Clerk

BRENDA D. FORMAN

**AMERICAN WITH DISABILITIES ACT OF 1990
ADA NOTICE REQUIREMENT**

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Diana Sobel, Room 20140, 201 S.E. Sixth Street, Fort Lauderdale, Florida 33301, 954-831-7721 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.:

DIVISION:

VANGUARD PLASTIC SURGERY, PLLC d/b/a
VANGUARD AESTHETIC AND PLASTIC
SURGERY,

       Plaintiff,

vs.

UNITEDHEALTHCARE INSURANCE
COMPANY, a foreign corporation,

       Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Vanguard Plastic Surgery, PLLC d/b/a Vanguard Aesthetic & Plastic Surgery ("Plaintiff") sues Defendant UnitedHealthcare Insurance Company ("Defendant") and alleges as follows:

### NATURE OF ACTION

1.    This action arises under Florida state law in connection with the unreasonably low rates at which Defendant reimbursed Plaintiff for medical services Plaintiff provided to a patient, A.S. ("Patient"), who at all material times was a member of a fully-insured group health insurance policy issued and administered by Defendant (the "Policy").

2.    Specifically, in or between July 2019 and February 2020, Plaintiff provided medically necessary services to Patient at Broward Health Medical Center ("BHMC") and Plantation General Hospital ("PGH"), consisting of two different complex surgical procedures

(collectively, the "Surgeries") relating to Patient's diagnosis of breast cancer, including: (a) a bilateral deep inferior epigastric flap ("DIEP flap") breast reconstruction procedure, with numerous additional procedures necessitated by various complications, which was performed immediately subsequent to, and as part of the same surgical session as a double mastectomy that was performed by an in-network surgeon at an in-network hospital; and (b) a bilateral revision of the prior reconstruction, including scar revision, fat grafting, and multiple other related procedures.

3.     The DIEP flap procedure is an extraordinarily complex and highly specialized breast reconstruction procedure, specifically a type of autologous free tissue transfer, that is performed by only a small number of reconstruction surgeons in the country who are trained in the technique. It uses a flap of complete tissue, blood vessels, skin, and fat from a patient's trunk as donor tissue, which is then transplanted to the chest, where those removed blood vessels are reconnected to the vessels in the chest and the flap is shaped into the new breast. It is unique even when compared to other types of microvascular free flaps. The DIEP flap harvests the tissue to be transferred with exceptionally delicate and precise care, with a level of complexity that is considerably greater and more technically demanding compared to implant-based reconstruction, pedicle flap reconstruction, and other types of traditional free flap reconstruction. The benefits of a DIEP flap include fewer surgeries and fewer complications (e.g., hernia, fat necrosis, complications relating to implants).

4.     Based upon Defendants' preauthorization of such services; the lack of other providers in the geographic area who were qualified to perform the complex and specialized DIEP flap reconstruction at the time Plaintiff provided the services at issue (as acknowledged by Defendant); the prior course of dealings between the parties; Defendant's representations on the remittance documents sent to Plaintiff; and/or the requirements of applicable law, Plaintiff

performed both Surgeries with the understanding and expectation that Defendant would reimburse Plaintiff at rates equal to the usual and customary payment rates and/or the fair market or reasonable value of those services.

5.      However, Defendant did not pay such amounts and instead wrongfully paid Plaintiff at rates well below the usual and customary rates and/or the fair market or reasonable value of such services, resulting in a remaining balance due from Defendant that far exceeds the minimum jurisdictional limits of this Court.

6.      Accordingly, while this lawsuit does not seek to enforce any rights under any health insurance policy issued, operated, and/or administered by Defendant, Plaintiff asserts multiple independent (and alternative) Florida state law claims to obtain appropriate payment from Defendant.

## PARTIES

7.      Plaintiff is a Florida professional limited liability company with its principal place of business located in Broward County, Florida.

8.      Defendant is a foreign corporation with its principal place of business located in Hartford, Connecticut.

9.      At all material times, Defendant was authorized to and engaged in the business of providing managed healthcare benefits and administrative services throughout the State of Florida, including Broward County, Florida.

## JURISDICTION AND VENUE

10.     The amount in controversy exceeds the sum of $50,000.00, exclusive of interest, costs, and attorneys' fees.

11.     Defendant is licensed to conduct business in the State of Florida, and in fact operates, conducts, engages in, and carries on business in the State of Florida. Upon information and belief, Defendant has offices and agencies throughout Florida.

12.     No federal subject-matter jurisdiction exists in this matter. *See, e.g., Emergency Services of Zephyrhills, P.A. v. Coventry Health Care of Florida, Inc.*, 281 F. Supp. 3d 1339 (S.D. Fla. 2017).

13.     Venue is proper in Broward County, Florida, because: (a) a substantial part of the events or omissions giving rise to this action occurred in this forum; (b) the subject medical procedures (i.e., the Surgeries) were provided in this forum; and (c) Defendant's underpayment of the associated Claims (defined below) occurred in this forum.

### GENERAL ALLEGATIONS

14.     Plaintiff, through its physicians, provides medical services, including emergency services and care, reconstruction services, and other surgical services, to patients in Broward County, Florida, including at BHMC and PGH.

15.     Plaintiff's physicians are licensed medical doctors practicing in the State of Florida.

16.     Plaintiff's physicians are fellowship-trained, board-certified plastic surgeons who specialize in microsurgery. They perform skin grafts, flap procedures, microsurgeries, and other surgical services that allow for complex repair of human tissue after trauma, cancer, and/or congenital defects. Upon information and belief, Plaintiff's physicians are the only plastic surgeons with privileges at BHMC with such qualifications.

17.     At all material times, Defendant was a health insurer and/or health insurance claims administrator that provided managed healthcare products and/or administrative services throughout Florida, including in Broward County, Florida.

18.     Defendant provides coverage for healthcare services provided to its members within the State of Florida, including Patient.

19.     In exchange for premiums, fees, and other forms of compensation, Defendant agrees to administer claims and provide reimbursement for healthcare services rendered to its members within the State of Florida, including Patient.

20.     To ensure that their members have access to and receive medically necessary care from qualified providers, within a reasonable geographic area of where their members live, and without unreasonable delay or burden, managed care organizations are required to maintain an adequate number and type of providers within their networks.

21.     Defendant acknowledges these network adequacy requirements by providing coverage for medical services rendered by certain out-of-network providers at usual and customary rates and by limiting patients' liability for those services to an in-network cost-sharing obligation.

22.     Upon information and belief, at all material times, BHMC and PGH are and were in-network with Defendant.

23.     At all material times, Patient was a resident of Broward County, Florida.

24.     Patient's Policy is a fully insured PPO policy and, as such, Defendant is subject to applicable state laws that regulate insurance in administering the Policy.

25.     Upon information and belief, Patient's Policy is a preferred provider group health insurance policy as defined and otherwise regulated by Chapter 627 of the Florida Statutes.

*Relevant Statutes*

26.     Sections 627.6417(1), 627.6612(1), and 641.31(32) of the Florida Statutes, and 29 U.S.C. § 1185b(a), all require health insurance contracts that provide coverage for mastectomies also to provide coverage for prosthetic devices and breast reconstruction surgery incident to

mastectomies, including surgery for the other breast to produce a symmetrical appearance (like and including the Surgeries).

27.     Those same statutes also require the treating physician, in consultation with the patient, to choose the manner in which those surgeries will occur (like Patient did with respect to the Surgeries in this case).

28.     Accordingly, both Florida law and federal law require that health insurers providing coverage for mastectomies (like and including Defendant) must also provide coverage for prosthetic devices and breast reconstruction surgery incident to mastectomies and that breast reconstruction surgery must be in a manner chosen by the patient's physician and in consultation with the patient (like and including Patient).

29.     Upon information and belief, Defendant acknowledged such coverage requirements by recognizing that the breast reconstruction surgeries and implanted prostheses incident to Patient's mastectomies are covered services and that such services must be provided in a manner chosen by Patient and Patient's treating physician.

30.     Section 641.513(5), Florida Statutes, further provides as follows:

Reimbursement for services pursuant to this section by a provider who does not have a contract with the health maintenance organization shall be the lesser of:

    a.  The provider's charges;

    b.  The usual and customary provider charges for similar services in the community where the services were provided; or

    c.  The charge mutually agreed to by the health maintenance organization and the provider within 60 days of the submittal of the claim.

Such reimbursement shall be net of any applicable copayment authorized pursuant to subsection (4).

31.     The phrase "usual and customary provider charges for similar services in the

community where the services were provided" under Section 641.513(5) has been interpreted to require payment of "fair market value" for the services rendered.[1]

32.     Section 627.64194(4) incorporates by reference the above dictates of Section 641.513(5) concerning the reimbursement of non-participating providers with respect to emergency and non-emergency services provided to patients covered under a PPO policy, as outlined in sections 627.64194(2) and 627.64194(3).[2]

33.     Sections 627.6515(1) and 627.662(15) together provide that the provisions of Section 627.64194 apply to group health insurance policies delivered or issued for delivery out of the State of Florida under which a resident of the State of Florida is provided coverage.

34.     Under the foregoing statutes, Defendant is obligated to reimburse Plaintiff at rates that are, at a minimum, equivalent to the "usual and customary provider charges for similar services in the community," which requires payment at fair market value.

35.     Defendant has breached its obligations under applicable Florida and Federal law, including, without limitation, Section 627.64194 (as applied via Sections 627.6515(1) and 627.662(15)).

### *Patient's Breast Cancer Diagnosis and Treatment Plan*

36.     Patient was diagnosed with breast cancer prior to Plaintiff's provision of any of the services at issue.

37.     Patient and Patient's breast cancer surgeon determined that the appropriate treatment plan for Patient's breast cancer diagnosis was for Patient to undergo bilateral mastectomies with immediate breast reconstruction surgery.

---

[1] *See Baker Cnty. Med. Servs. v. Aetna Health Mgmt., LLC*, 31 So. 3d 842, 845-46 (Fla. 1st DCA 2010).

[2] *See Sarasota Cnty. Pub. Hosp. Bd. v. Blue Cross & Blue Shield of Fla., Inc.*, 511 F. Supp. 3d 1240, 1254 (M.D. Fla. 2021).

38.     Upon information and belief, Patient's breast cancer surgeon is and was at all material times an in-network provider with Defendant.

39.     Patient's breast cancer surgeon referred Patient to Plaintiff for breast reconstruction surgery, with the initial stage to be performed immediately after bilateral mastectomies and as part of the same surgical team.

40.     By operating as a team, Patient's breast cancer surgeon and Plaintiff's physicians were able to participate in the same surgical session in which the bilateral mastectomies were performed, thereby avoiding the need for Patient to undergo a separate admission and the need to undergo a separate surgery for the initial stage of Patient's breast reconstruction.

41.     The simultaneous mastectomies and reconstructions are the highest medical standard of care now available for shielding the cancer-suffering patient from the grave potential physical and mental harms associated with forcing such patients to undergo these major surgeries at different times.

### *First Surgery – July 1, 2019*

42.     On or about July 1, 2019, Patient presented to BHMC, located in Fort Lauderdale, Broward County, Florida, for pre-authorized bilateral mastectomies and initial-stage breast reconstruction due to a breast cancer diagnosis.

43.     Upon information and belief, BHMC is in-network with Defendant.

44.     On or about July 1, 2019, Patient was admitted to BHMC for surgery on an inpatient basis.

45.     Defendant's prior authorization for Plaintiff's July 1, 2019, services under prior authorization numbers A074747089, A074811857, A075213685,  at which time Plaintiff was advised that the "out-of-network" payment terms would be waived and that Defendant had instead

agreed to "allow charges for the requested services to be paid at the in-network payment level."

46.     On or about July 1, 2019, immediately subsequent to and during the same surgical session as the bilateral mastectomies, Plaintiff, through its physicians, provided medically necessary services to Patient at BHMC, which services consisted of an extensive complex surgical procedure as part of the initial stage of Patient's breast reconstruction following bilateral mastectomies, including DIEP flaps bilaterally with complications from scar tissue, bilateral exploration of the thoracodorsal vessels, bilateral partial removal of the #4 rib, bilateral separation of abdominal components with mesh placement, closure of the abdomen with Prevenna VAC placement, entire flap burial of the breast to monitor questionable tissue and allow for de-epithelialization, and multiple other related procedures (the "First Surgery").

### *Second Surgery – February 6, 2020*

47.     After the First Surgery, Patient had difficulty with a bulging abdominal scar, causing discomfort, as well as asymmetry and scar contracture.

48.     Accordingly, on or about February 6, 2020, Patient presented to PGH for surgery.

49.     Upon information and belief, PGH is in-network with Defendant.

50.     Upon information and belief, Defendant issued prior authorization for Plaintiff's services of February 6, 2020, under prior authorization number A089684957.

51.     On or about February 6, 2020, through its physician, Plaintiff provided medical services to Patient at PGH as part of Patient's ongoing bilateral breast reconstruction, including elevation of fat grafting of both breasts, removal of scar tissue, revision of umbilicus and Ryan flap of the right breast, and related procedures (the "Second Surgery").

### *Defendants' Underpayment of the Claims*

52.     Plaintiff submitted claims for reimbursement to Defendant for the services that Plaintiff provided to Patient as part of the Surgeries (collectively, the "Claims").

53.     Plaintiff's charges for the services it provided as part of the First Surgery totaled $345,091.00. Defendant paid only $1,997.01 to Plaintiff for those services.

54.     Plaintiff's charges for the services it provided as part of the Second Surgery totaled $71,681.00. Defendant paid only $1,089.97 to Plaintiff for those services.

55.     Accordingly, Plaintiff's charges for the services underlying the Claims totaled $416,772.00.

56.     To date, Defendant has paid Plaintiff a total of only $3,086.98 on the Claims, which is a mere 0.7% of Plaintiff's charges for the services at issue and nowhere near the amount Defendant is required to pay pursuant to the parties' implied contracts and/or under applicable law.

57.     In connection with such underpayments, Defendant issued remittance notices to Plaintiff in Fort Lauderdale, Florida.

58.     In those remittance notices, Defendant included remarks such as: "CO45[:] Charge exceeds fee schedule/maximum allowable or contracted/legislated fee arrangement."

59.     "CO" is a standardized claim adjustment group code meaning "Contractual Obligations," and "45" is a standardized reason code meaning "Charge exceeds maximum fee schedule/maximum allowable or contracted/legislated fee arrangement." Together, these codes—which are required under applicable regulations to be uniformly applied in adjudicating claims—are meant to explain why a claim may not have been paid at a provider's full billed charges.

60.     The "CO" claim adjustment group code is to be used in situations where the insured patient is not financially responsible for any adjustment to a claim, other than the patient's co-

insurance and deductible, due either to a contractual obligation between a provider, like Plaintiff, and a payer, like Defendant, or to an applicable regulatory requirement.

61.     The "45" reason code is to be used in conjunction with the "CO" claim adjustment code in situations where the adjustment is related to a contracted or negotiated rate.

62.     In this case, Defendant's use of the "CO45" code on the remittance documents it sent to Plaintiff indicates that Defendant relied upon either a contract between Plaintiff and Defendant or a regulatory requirement (e.g., Section 627.64194, Florida Statutes).

63.     At all material times, Defendant was and is aware that Plaintiff provided medical services to Patient and billed Defendant for same with the expectation and understanding that Defendant had approved its services and that it would be reimbursed by Defendant at rates reflecting (a) the lesser of (i) Plaintiff's billed charges or (ii) the usual and customary provider charges for similar services (i.e., fair market value), as provided by Section 627.64194, for claims subject to those sections; and/or (b) the fair market or reasonable value, or *quantum meruit*, of the medical services Plaintiff provided, for claims not subject to Section 627.64194.

64.     Plaintiff's understanding and expectation in this regard was based upon, among other things: (a) Defendant's obligation to ensure that Patient and Defendant's other members could access and receive medically necessary care from providers without unreasonable delay or burden; (b) Defendant's authorization of Patient's admissions to BHMC and PGH on the dates listed above for the treatment of Patient's medical conditions; (c) verbiage contained in the remittance notices issued by Defendant to Plaintiff in connection with processing the Claims referencing a "contractual obligation" utilizing a "CO" claim adjustment code; and/or (d) Defendant's adjudication of the Claims, which determined that the services underlying the Claims were "covered services" (i.e., medically necessary).

65.     Defendant already adjudicated the Claims, agreed to provide coverage for most of the underlying services, and paid Plaintiff for the medical services provided to Patient (albeit at rates below the reasonable fair market value thereof).

66.     Accordingly, this is a rate-of-payment, and not a right-to-payment, dispute.

67.     The rates at which Defendant paid Plaintiff are less than the rates Plaintiff received during the same time from other, similar managed care organizations for similar services provided in the same community.

68.     Defendant's refusal to pay Plaintiff the reasonable fair market value of the medical services Plaintiff provided to Patient has caused Plaintiff to suffer damages in an amount equal to the difference between the amounts Defendant paid on the Claims and the reasonable fair market value of the services Plaintiff provided, plus Plaintiff's loss of use of that money.

69.     The difference between the amount Defendant paid and Plaintiff's billed charges totals **$413,685.02**.

70.     All necessary conditions precedent to Plaintiff bringing this action have occurred or were performed, excused, and/or waived.

*General Allegations Specific to Statutory Non-Emergency Services Counts*

71.     Section 627.64194(4) (as applied via Sections 627.6515(1) and 627.662(15)) imposes a duty on Defendant, as a managed care organization insuring and/or administering the Policy, to reimburse Plaintiff for the Claims according to the statute's dictates.

72.     Section 627.64194(3) provides that an insurer is solely liable for payment to a nonparticipating provider of covered nonemergency services provided to an insured where those services are: (a) provided in a facility that has a contract for the nonemergency services with the insurer which the facility would be otherwise obligated to provide under contract with the insurer;

and (b) provided when the insured does not have the ability and opportunity to choose a participating provider at the facility who is available to treat the insured.

73.     Plaintiff has a private right of action against Defendant under Section 627.64194(4) to enforce the statute's provisions.

74.     At all material times, Plaintiff was a non-participating medical provider that provided medical services and staffing at BHMC and PGH.

75.     During the Surgeries, Plaintiff provided covered medical services to Patient at BHMC and PGH in accordance with the terms of the Policy.

76.     Upon information and belief, at all material times, BHMC and PGH had contracts with Defendant for the covered medical services Plaintiff provided to Patient during the Surgeries, which services BHMC and PGH would otherwise have been obligated to provide to Patient under their contracts with Defendant.

77.     Patient did not have the ability or opportunity to choose a participating provider at BHMC or PGH who was available to treat Patient at the time Plaintiff provided the covered medical services to Patient as part of the Surgeries because: (a) upon information and belief, Plaintiff's physicians were the only microsurgeons with privileges at BHMC and PGH who worked as a team with Patient's breast cancer surgeon and who had the qualifications necessary to perform the complex DIEP flap procedure at the time Patient underwent those Surgeries; and/or (b) Plaintiff's physicians were the surgeons who previously operated on Patient and therefore were responsible for Patient's follow-up treatment pursuant to a continuation of care.

78.     Defendant recognized that Plaintiff did not have the ability or opportunity to choose a participating provider at BHMC who was available to treat Patient at the time Plaintiff provided the covered medical services to Patient as part of the Surgeries by providing prior authorization to

Patient for the Surgeries.

79.     Plaintiff submitted the Claims for the services it provided to Patient as part of the Surgeries, which Claims were subject to Sections 627.64194(3) and 627.64194(4).

80.     Plaintiff submitted the Claims to be administered and processed by Defendant.

81.     The Claims set forth Plaintiff's billed charges for the services it provided to Patient as part of the Surgeries.

82.     Upon information and belief, Defendant was responsible for effectuating payment of the Claims.

83.     Defendant ultimately decided to issue payments to Plaintiff for the Claims, but at rates significantly below the "usual and customary provider charges for similar services in the community where the services were provided" that it was obligated to pay pursuant to Section 627.6419(4).

84.     Plaintiff and Defendant did not mutually agree on a specific charge for any of the Claims, and Plaintiff did not agree to accept discounted rates from Defendant for the Claims.

85.     Due to Defendant's failure to fulfill its legal obligations to reimburse Plaintiff in accordance with Sections 627.64194(4) and 641.513(5), Plaintiff has suffered injury and is entitled to monetary damages from Defendant.

86.     Plaintiff is further entitled to simple interest at the rate of 12% per year pursuant to Section 627.6131.

**COUNT I**
**<u>Breach of Implied-in-Fact Contract</u>**
*Alternative to Remaining Counts*

87.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 25 and 36 through 70 above.

88.     This Count I is pleaded in the alternative to all remaining counts, and only to the extent the services underlying the Surgeries are determined not to be subject to the payment mandates set forth in the Florida Statutes referenced above.

89.     At all material times, Defendant knew or should have known that Plaintiff was a non-participating medical provider that provided medical services and staffing at BHMC and PGH.

90.     Upon information and belief, Defendant: (a) approved of Patient's admissions to BHMC and PGH on the dates set forth above for the treatment of Patient's medical conditions; (b) approved of the provision of medical services to Patient by providers like Plaintiff during those admissions; and (c) tacitly agreed to pay Plaintiff the fair market or reasonable value of the medical services Plaintiff rendered to Patient as part of the Surgeries.

91.     Defendant further approved of Plaintiff's provision of services to Patient as part of the Surgeries by issuing prior authorizations for those services under prior authorization numbers A074747089, A074811857, A075213685, and/or A089684957.

92.     In exchange, Plaintiff agreed to perform the Surgeries on Patient and did not balance bill Patient for the Surgeries.

93.     Defendant acknowledged its obligation and responsibility for payment and its approval of Plaintiff's performing medical services as part of the Surgeries by paying Plaintiff's Claims for those services, albeit at rates far below the reasonable fair market value of same.

94.     Plaintiff has conferred a direct benefit on Defendant by: (a) providing Defendant with access to "out-of-network" medical services provided by Plaintiff at a discounted rate, thereby making Defendant a more attractive option to potential customers by enhancing Defendant's networks; (b) ensuring that Patient (and Defendant's other members) have prompt and reasonable access to "out-of-network" medical providers like Plaintiff, thereby allowing Defendant to fulfill

its obligation to its members to provide an adequate number and type of providers to ensure that its members have access to and receive medically necessary without unreasonable delay or burden; (c) agreeing to provide discounted rates for services provided to Patient, thereby reducing the amount of Defendant's financial liability for those services; (d) allowing Defendant to meet its statutory obligations to provide coverage for prosthetic devices and breast reconstruction surgery(ies) incident to mastectomies; and/or (e) allowing Patient to avoid being subject to balance billing for the services provided as part of the Surgeries, thereby eliminating complaints by Patient that would have occurred had Plaintiff instead sought the balance of its bill from Patient.

95.     Defendant's issuance of prior authorization for the services Plaintiff provided to Patient and Defendant's partial payment for the services at issue was intentional and demonstrate an understanding between the parties that Defendant would pay Plaintiff for the services Plaintiff provided to Patient.

96.     Defendant, therefore, knew or should have known that Plaintiff was conferring the above benefits with the expectation that Defendant would reimburse it for same at the fair market or reasonable value of same.

97.     Plaintiff fully performed its obligations under the parties' implied-in-fact contract by performing the Surgeries and by not balance billing Patient for the Surgeries.

98.     As set forth above, however, Defendant materially breached the parties' implied-in-fact contract by failing to pay Plaintiff the reasonable fair market value for the services Plaintiff provided as part of the Surgeries.

99.     Defendant has refused to cure and/or remedy the foregoing breach, although duly demanded.

100.     As a direct and proximate result of Defendant's breach of the parties' implied-in-

fact contract (i.e., Defendant's tacit promise to pay Plaintiff at the reasonable fair market value), Plaintiff has been damaged.

101.     The circumstances are such that it would be inequitable for Defendant to retain the above benefits without paying a reasonable amount for same.

102.     Plaintiff seeks compensatory damages, as permitted by applicable law, in an amount equal to the difference between the amounts Defendant paid to Plaintiff for the Claims and the reasonable value of the medical services underlying the Claims, plus interest.

WHEREFORE, Plaintiff prays that this Court enter a judgment against Defendant in favor of Plaintiff in an amount representing the difference between the amounts Defendant paid to Plaintiff for the claims at issue and the fair market or reasonable value of the medical services underlying those claims, as determined by the finder of fact, together with an award of all awardable interest, costs, and such other and further relief as the Court may deem just and proper.

## COUNT II
## UNJUST ENRICHMENT / BREACH OF CONTRACT IMPLIED-IN-LAW
*Alternative to Remaining Counts*

103.     Plaintiff realleges and incorporates by reference paragraphs 1 through 70 above.

104.     This Count II is pleaded in the alternative to all remaining counts.

105.     Defendant collects premiums from its members and subscribers in return for agreeing to properly reimburse providers, like Plaintiff, that render medical services to members, like Patient.

106.     In exchange for premiums and other forms of compensation, Defendant owes its members, including Patient, an obligation to pay for the covered medical services the members receive.

107.     Under applicable law, Defendant is obligated to provide coverage for services like those rendered during the Surgeries and provided by providers like Plaintiff.

108.    Defendant derives a direct benefit from Plaintiff's provision of medical services to its members because it is through Plaintiff's provision of those services that Defendant fulfills its legal obligations to its members.

109.    Under established Florida precedent, Plaintiff conferred a direct benefit on Defendant by providing valuable medical services to Patient at BHMC as part of the Surgeries, with the knowledge and/or approval of Defendant. *See Merkle v. Health Options, Inc.*, 940 So. 2d 1190, 1199 (Fla. 4th DCA 2006), *rev. denied*, 962 So. 2d 336 (Fla. 2007); *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 899 So. 2d 1222, 1228 (Fla. 1st DCA 2005).

110.    More particularly, Plaintiff has conferred a direct benefit on Defendant by: (a) providing Defendant with access to "out-of-network" medical services provided by Plaintiff at a discounted rate, thereby making Defendant a more attractive option to potential customers by enhancing Defendant's networks; (b) ensuring that Patient (and Defendant's other members) have prompt and reasonable access to "out-of-network" medical providers like Plaintiff, thereby allowing Defendant to fulfill its obligation to its members to provide an adequate number and type of providers to ensure that its members have access to and receive medically necessary without unreasonable delay or burden; (c) agreeing to provide discounted rates for services provided to Patient, thereby reducing the amount of Defendant's financial liability for those services; (d) allowing Defendant to meet its statutory obligations to provide coverage for prosthetic devices and breast reconstruction surgery(ies) incident to mastectomies; and/or (e) allowing Patient to avoid being subject to balance billing for the services provided as part of the Surgeries, thereby eliminating complaints by Patient that would have occurred had Plaintiff instead sought the balance of its bill from Patient.

111. Plaintiff's provision of such covered medical services to Patient further benefitted Defendant because it offered a more permanent and/or more beneficial solution to the medical conditions for which Patient initially sought treatment on the dates set forth above, negating Patient's need to seek additional medical treatment in the future for which Defendant would be financially liable. In other words, by minimizing (if not entirely eliminating) Patient's future medical expenses for those medical conditions, and thus medical claims to Defendant, including expenses and claims for prolonged alternative treatments or additional medical services, complications arising from an inferior treatment regimen, or ongoing expenses and claims associated with inferior reconstruction methods of Patient's breasts, which claims and expenses Defendant would be responsible for administering and paying, Plaintiff conferred a benefit directly on Defendant.

112. Defendant acknowledged, accepted, and retained the benefits so conferred from Plaintiff's providing such medical services to Patient as part of the Surgeries, because it allowed Defendant to fulfill its legal obligations to: (a) provide Patient with coverage for all stages of reconstruction in connection with Patient's mastectomies and for prostheses and physical complications thereof; and (b) ensure that its members, like and including Patient, have access to and receive medically necessary care without unreasonable delay or burden.

113. Defendant has failed to pay the reasonable fair market value of the benefit conferred upon it by Plaintiff, in this case, the reasonable value of the services provided to Patient as part of the Surgeries. By refusing to pay Plaintiff appropriately, Defendant has been unjustly enriched.

114. The circumstances are such that it would be unjust and inequitable for Defendant to retain the direct benefit conferred on it by Plaintiff without paying the reasonable fair market value of same.

115.     Plaintiff seeks compensatory damages, as permitted by applicable law, in an amount equal to the difference between the amounts Defendant paid to Plaintiff for the Claims and the reasonable fair market value of the medical services underlying the Claims, plus interest.

WHEREFORE, Plaintiff prays that this Court enter a judgment against Defendant and in favor of Plaintiff in an amount representing the difference between the amounts Defendant paid to Plaintiff for the claims at issue and the fair market or reasonable value of the medical services underlying those claims, as determined by the finder of fact, together with an award of all awardable interest, costs, and such other and further relief as the Court may deem just and proper.

### COUNT III
### <u>VIOLATION OF SECTION 627.64194(4)</u>
### <u>NONEMERGENCY SERVICES (FIRST SURGERY)</u>
*Alternative to Counts I and II*

116.     Plaintiff realleges and incorporates by reference paragraphs 1 through 86 above.

117.     Defendant violated Section 627.64194(4) by failing to pay Plaintiff the "usual and customary provider charges for similar services in the community where the services were provided" for the Claims for the First Surgery.

118.     Plaintiff seeks compensatory damages, as permitted by applicable law, in an amount equal to the difference between the fair market value of the services underlying the Claims for the First Surgery, plus interest.

WHEREFORE, Plaintiff prays that this Court enter a judgment against Defendant in favor of Plaintiff in an amount representing the difference between the amount Defendant paid to Plaintiff for the Claims for the First Surgery and the fair market value of the medical services underlying those claims, together with an award of prejudgment interest, costs, and such other and further relief as the Court may deem just and proper.

**COUNT IV**
**VIOLATION OF SECTION 627.64194(4)**
**NONEMERGENCY SERVICES (SECOND SURGERY)**
*Alternative to Counts I and II*

119.     Plaintiff realleges and incorporates by reference paragraphs 1 through 86 above.

120.     Defendant violated Sections 627.64194(4) by failing to pay Plaintiff the "usual and customary provider charges for similar services in the community where the services were provided" for the Claims for the Second Surgery.

121.     Plaintiff seeks compensatory damages, as permitted by applicable law, in an amount equal to the difference between the fair market value of the medical services underlying the Claims for the Second Surgery, plus interest.

WHEREFORE, Plaintiff prays that this Court enter a judgment against Defendant in favor of Plaintiff in an amount representing the difference between the amount Defendant paid to Plaintiff for the Claims for the Second Surgery and the fair market value of the medical services underlying those claims, together with an award of prejudgment interest, costs, and such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues so triable.

Dated: October 11, 2023.                         Respectfully submitted,

SHAPIRO, BLASI, WASSERMAN &
HERMANN, P.A.

By: *s/ Genevieve Lee Turner*
RICHARD P. HERMANN, II, ESQ.
Fla Bar. No. 110019
Primary Email: rhermann@sbwh.law
Secondary Email: floridaservice@sbwh.law
GENEVIEVE LEE TURNER, ESQ.
Fla Bar. No. 100058
Primary Email: gturner@sbwh.law
Secondary Email: lfonseca@sbwh.law
7777 Glades Road, Suite 400
Boca Raton, Florida 33434
Phone:     561-477-7800
Fax:       561-477-7722

**FORM 1.997.   CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.   CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>SEVENTEENTH</u>   JUDICIAL CIRCUIT, IN AND FOR <u>BROWARD</u>   COUNTY, FLORIDA

<u>Vanguard Plastic Surgery, PLLC</u>
Plaintiff

Case # _____

Judge _____

vs.

<u>UnitedHealthcare Insurance Company</u>
Defendant

_____

### II.   AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

- ☐ $8,000 or less
- ☐ $8,001 - $30,000
- ☐ $30,001- $50,000
- ☐ $50,001- $75,000
- ☐ $75,001 - $100,000
- ☒ over $100,000.00

### III.   TYPE OF CASE   (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

**CIRCUIT CIVIL**

☐ Condominium
☒ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
    ☐ Business governance
    ☐ Business torts
    ☐ Environmental/Toxic tort
    ☐ Third party indemnification
    ☐ Construction defect
    ☐ Mass tort
    ☐ Negligent security
    ☐ Nursing home negligence
    ☐ Premises liability—commercial
    ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐ Commercial foreclosure
    ☐ Homestead residential foreclosure
    ☐ Non-homestead residential foreclosure
    ☐ Other real property actions

☐Professional malpractice
    ☐ Malpractice—business
    ☐ Malpractice—medical
    ☐ Malpractice—other professional
☐ Other
    ☐ Antitrust/Trade regulation
    ☐ Business transactions
    ☐ Constitutional challenge—statute or ordinance
    ☐ Constitutional challenge—proposed amendment
    ☐ Corporate trusts
    ☐ Discrimination—employment or other
    ☐ Insurance claims
    ☐ Intellectual property
    ☐ Libel/Slander
    ☐ Shareholder derivative action
    ☐ Securities litigation
    ☐ Trade secrets
    ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.     REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.     NUMBER OF CAUSES OF ACTION:** [   ]
(Specify)

  <u>4</u>

**VI.     IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.     HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.     IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

**IX.     DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ Genevieve Lee Turner</u>      Fla. Bar # <u>100058</u>
        Attorney or party                  (Bar # if attorney)

<u>Genevieve Lee Turner</u>           <u>10/11/2023</u>
(type or print name)              Date

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.: CACE-23-019551

DIVISION: 12

VANGUARD PLASTIC SURGERY, PLLC d/b/a
VANGUARD AESTHETIC AND PLASTIC
SURGERY,

       Plaintiff,

vs.

UNITEDHEALTHCARE INSURANCE
COMPANY, a foreign corporation,

       Defendant.

_____/

## NOTICE OF FILING NOTICE OF SERVICE OF PROCESS

       Plaintiff VANGUARD PLASTIC SURGERY, PLLC d/b/a VANGUARD AESTHETIC
AND PLASTIC SURGERY, pursuant to section 48.151, Florida Statutes, and the applicable Rules
of Civil Procedure, gives notice of filing the attached Notice of Service of Process ("Notice") on
UNITEDHEALTHCARE INSURANCE COMPANY, a foreign corporation ("Defendant"), in the
above titled action. Pursuant to section 48.151(1) and the attached Notice, Defendant's response
to Plaintiff's Complaint is due twenty (20) days from October 16, 2023.

*[Remainder of page intentionally left blank]*

Dated: October 16th, 2023

                      **SHAPIRO, BLASI, WASSERMAN &**
                      **HERMANN, P.A.**
                      *Attorneys for Plaintiff*
                      7777 Glades Road, Suite 400
                      Boca Raton, Florida 33434
                      Telephone:  (561) 477-7800
                      Facsimile:      (561) 477-7722

     By:  *s/ Genevieve Lee Turner*
               RICHARD P. HERMANN, II, ESQ
               Florida Bar No. 110019
               Primary E-Mail: rhermann@sbwh.law
               Secondary E-Mail: floridaservice@sbwh.law
               GENEVIEVE LEE TURNER, ESQ.
               Florida Bar No. 100058
               Primary E-Mail:  gturner@sbwh.law
               Secondary E-Mail:  lfonseca@sbwh.law

*23-000509688*

CHIEF FINANCIAL OFFICER
JIMMY PATRONIS
STATE OF FLORIDA

---

VANGUARD PLASTIC SURGERY, PLLC D/B/A
VANGUARD AESTHETIC AND PLASTIC
SURGERY

PLAINTIFF(S)

VS.

UNITEDHEALTHCARE INSURANCE COMPANY

DEFENDANT(S)

_____/

SUMMONS, COMPLAINT, CIVIL COVER SHEET

**CASE #:** **CACE-23-019551**
**COURT:** **17TH JUDICIAL CIRCUIT**
**COUNTY:** **BROWARD**
**DFS-SOP #:** 23-000509688

# NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said process was received in my office by ELECTRONIC DELIVERY on Friday, October 13, 2023 and a copy was forwarded by ELECTRONIC DELIVERY on Monday, October 16, 2023 to the designated agent for the named entity as shown below.

UNITEDHEALTHCARE INSURANCE COMPANY
DONNA MOCH
1200 SOUTH PINE ISLAND ROAD
PLANTATION, FL 33324

**\*Our office will only serve the initial process (Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule 1.080.**

Jimmy Patronis

Jimmy Patronis
Chief Financial Officer

LAURA FONSECA
SHAPIRO BLASI WASSERMAN HERMANN
7777 GLADES ROAD
SUITE 400
BOCA RATON, FL 33434

KS1